K<small>ATZ</small>M<small>ELINGER</small>
280 M<small>ADISON</small> A<small>VENUE</small>, S<small>UITE</small> 600
N<small>EW</small> Y<small>ORK</small>, N<small>EW</small> Y<small>ORK</small> 10016
www.katzmelinger.com

| | |
|---|---:|
| Eliseo Cabrera | t: 212.460.0047 |
| Katz Melinger PLLC | f: 212.428.6811 |
| | edcabrera@katzmelinger.com |

April 6, 2023

**Via ECF**
The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007



Re:   **Rafael Fernandez v. J.F. Meat & Grocery Corp. et al.**
       **Civil Action No. 22-cv-01258-KPF**

Your Honor:

      We are attorneys for plaintiff Rafael Fernandez, and write jointly with attorneys for J.F. Meat & Grocery Corp., Luis Ferreira, Daniel Ferreira, Giovanni Ferreira, and Julio Guzman (collectively "Defendants," and with Plaintiff, "the Parties") to seek approval of the Parties' agreement to settle the claims asserted against Defendants in the above-captioned matter. Plaintiff asserted six (6) causes of action in this matter, including claims for overtime violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL"); failure to provide spread of hours wages under the NYLL; failure to provide payroll notices and wage statements under the NYLL; and failure to timely pay wages under the NYLL. The Parties write to respectfully request that the Court approve the settlement agreement, a copy of which is attached herewith, and allow the Parties to discontinue the matter with prejudice as against the Defendants pursuant to Fed. R. Civ. P. 41.

      As explained in further detail below, the Parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

**Background**

      This matter arises from Plaintiff's employment with Defendants J. F. Meat & Grocery Corp. ("JF Meat"), Luis Ferreira, Daniel Ferreira, Giovanni Ferreira, and Julio Guzman, from 2013 until on or around March 2021. Plaintiff worked for Defendants as a deli clerk, and his primary job duties included providing customer service, cutting and preparing meats and cheese to sell, preparing products for sale, and taking inventory.

1. <u>Plaintiff's Overtime and Spread of Hours Claims.</u>

      Plaintiff alleges that from 2013 until July 2019, he regularly worked six (6) days per week, for a total of between sixty-three (63) and eighty-seven (87) hours per week. From July 2019 until June 2020, Plaintiff worked five (5) days per week for approximately (8) hours per day for a total of forty (40) hours per week. However, throughout this period, Plaintiff was required to work overtime hours approximately twice a month; therefore, twice a month, Plaintiff worked approximately forty-seven (47) hours per week.[1] From June 2020 until the end of Plaintiff's employment, Plaintiff worked four (4) days per week for approximately (8) hours per day for a total of thirty-two (32) hours per week.

      Plaintiff claims that throughout his employment, Defendants paid him minimum wage rates for all hours worked, and he was never paid the overtime premium rate for the hours he worked over forty (40) in a week. Plaintiff also claims that starting in or around 2019, Defendants required him to sign pay receipts reflecting the payment of overtime compensation. However, as mentioned, Plaintiff was actually paid at the regular hourly rate and not the correct overtime premium of one and a half (1.5) times his regular rate for the hours that he worked over forty (40) per week. Defendants dispute these claims.

      Plaintiff alleges that he was a non-exempt employee entitled to overtime pay of 1.5 times his regular rate of pay for each hour worked in excess of forty (40) hours per week and that he was also entitled to an additional hour of pay at the basic minimum wage rate for each day that he worked a shift spanning more than ten (10) hours. Plaintiff alleges that Defendants owe him $17,506.95 in unpaid overtime wages and $15,300.00 in unpaid spread of hours wages, for a total of $32,806.95, plus costs, interest, and reasonable attorneys' fees. Defendants adamantly deny any and all wrongdoing and maintain that Plaintiff was properly paid for all hours worked.

2. <u>Plaintiff's Payroll Notice and Wage Statement Claims.</u>

      As a non-exempt employee, Plaintiff alleges that he was entitled to, but did not receive, a payroll notice at the start of his employment containing the information required under NYLL § 195(1), as well as wage statements with each wage payment containing the information required under NYLL § 195(3). Plaintiff alleges that Defendants owe him $10,000.00 for wage and payroll notice penalties. Defendants dispute these claims.

---

[1] Plaintiff contracted Covid-19 in or around May 2020 and was unable to work for approximately one month.

3. <u>Plaintiff's Timely Wages Claims.</u>

Plaintiff claims that he was entitled to be paid his earned wages weekly and not later than seven (7) days after the end of the week in which the wages were earned, but he did not receive all of his earned wages in a timely manner, including overtime wages and spread of hours wages, in accordance with the NYLL. Defendants dispute these claims.

**Settlement History**

Plaintiff commenced this action on February 15, 2022. On June 23, 2022, Your Honor referred this case to mediation under Local Civil Rule 83.9. The Parties subsequently engaged in good faith, arms' length settlement negotiations by and through their attorneys. Plaintiff and Defendants ultimately agreed to a full settlement of all claims between them, inclusive of attorneys' fees and costs. The amount agreed upon reflects a mutual desire to reach an amicable resolution in this matter without additional litigation.

**The Proposed Settlement Should Be Approved**

The attached settlement agreement contains a full settlement of all claims, inclusive of attorneys' fees and costs, between Plaintiff and Defendants in this action. The amount agreed upon reflects a mutual desire to reach an amicable resolution of Plaintiff's claims without the cost and uncertainty of further litigation. The settlement amount also reflects a significant discount to Defendants in the event that Plaintiff would prevail on his claims.

1. <u>The settlement amount is fair and reasonable.</u>

The Parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiff's FLSA and NYLL claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiff is represented by competent counsel, and the settlement amount, $42,500.00, results in net recovery to Plaintiff, after expenses and proposed attorneys' fees, of $27,279.33. Additionally, Defendants agree that the settlement amount will be held in escrow by Defendants' counsel, and will be paid in a lump sum to Plaintiff immediately upon the Court's approval of this agreement, or by April 15, 2023, whichever is later. The settlement amount is fair and reasonable given that Plaintiff is recovering more than his alleged unpaid wages from Defendants although Defendants assert that they are not liable for Plaintiff's claims; that the settlement amount is more than half of the total damages claimed; the early stage at which the settlement was reached; the time and expense associated with continued ligation; and the risk that Plaintiff would receive an unfavorable outcome in this matter or, if Plaintiff prevails in his claims, would need to enforce a judgment against Defendants. For these reasons, the proposed agreement with Defendants represents a fair and reasonable resolution of a bona fide dispute.

Hon. Katherine P. Failla<br>
April 6, 2023<br>
Page 4

2. <u>The settlement agreement was the result of arm's length negotiations by the parties.</u>

The proposed settlement is the product of negotiation between represented parties following extensive settlement discussions. Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims; however, the arm's length bargaining, along with the information shared during settlement negotiations, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Through discovery and candid discussions between counsel, the Parties can assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, since Defendants no longer employ Plaintiff, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the Defendants, as is the case here") (citation and internal quotation marks omitted).

After weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiff's alleged injuries will not recur as Plaintiff is no longer employed by Defendants; (ii) Defendants explicitly deny any wrongdoing; and (iii) continuing to develop the record will only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 335-36.

3. <u>Plaintiff's counsel's fees are reasonable.</u>

Lastly, the Parties agree that the settlement amount is a reasonable compromise between Plaintiff and Defendants, and the proposed amount of attorneys' fees is also fair and reasonable as Plaintiff's counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiff. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest, and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiff's counsel over Plaintiff.

Under the proposed agreement, Plaintiff's counsel would recover $1,054.00 as reimbursement for costs and expenses[2] and $14,166.67 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover out of Plaintiff's settlement amount fees totaling one-third of any amounts recovered on behalf of Plaintiff, as well as costs and expenses.

---

[2] Plaintiff's costs and expenses are comprised of a $402.00 filing fee and $652.00 in costs for service of process.

This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.,* 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit"). The proposed fee award of one-third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.,* 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement).

As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit 1**, Plaintiff's counsel has spent a total of 62.70 hours on this matter as follows: Kenneth Katz, 0.10 hours; Nicole Grunfeld, 7.70 hours; Eliseo Cabrera, 43.30 hours; Katherine Morales, 0.50 hours; and Vanessa Ueoka, 11.10 hours. Plaintiff's counsel's hourly rates – $575, $525, $375, $375, and $300, respectively – are reasonable based on Plaintiff's counsels' experience and are in line with the rates charged by attorneys in this district. *See Lilly v. City of New York,* No. 16 Civ. 322, 2017 U.S. Dist. LEXIS 129815, at *1 (S.D.N.Y. Aug. 15, 2017)(reasonable hourly rate can range from $250 to $650); *Brown v. City of New York,* 2020 WL 6075524, at *4 (S.D.N.Y. Oct. 15, 2020) (approving rates up to $550 per hour for partners and collecting cases).

Mr. Katz is the founding member and managing partner of Katz Melinger PLLC, a boutique firm established in 2012. Mr. Katz earned his B.S. in 2000 from the State University of New York at Albany, and his J.D. in 2003 from Hofstra University School of Law, with an award recognizing his achievements in the employment law field. Mr. Katz was admitted to the Bar of the state of New York in 2004 and New Jersey in 2016, and his practice is focused primarily on litigation, with substantial experience handling wage and hour matters.

Ms. Grunfeld is a partner at Katz Melinger PLLC, where she has worked for more than nine years. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005 and New Jersey in 2018, and has focused on Plaintiff's employment matters for more than fifteen years. She currently serves as Vice President of the Board of the New York chapter of the National Employment Lawyers' Association.

Mr. Cabrera is an associate at the firm. He earned his B.A from University of California, Berkeley in 2007 and his J.D. from City University of New York School of Law in 2015. Mr. Cabrera has focused his practice on employment law since May 2019 and has been a member in good standing of the New York Bar since 2017.

Ms. Morales is an associate at Katz Melinger PLLC. She earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017; she was admitted to practice in New York in 2018 and New Jersey in 2020. Prior to joining the firm in 2017, Ms. Morales worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits. Ms. Morales focuses her practice exclusively on employment law matters.

      Ms. Ueoka is a law clerk at Katz Melinger PLLC who earned her B.A from Hunter College and her J.D. from Rutgers Law School. Ms. Ueoka joined the firm in August 2022 and is awaiting admission to the New York State Bar.

      The $14,166.67 fee sought by Plaintiff's counsel is less than Plaintiff's counsel's "lodestar" amount of $23,855.00 and is therefore reasonable. *See e.g. Huerta v. Aura Wellness Spa Corp.*, 2021 US Dist LEXIS 34360, at *3 (S.D.N.Y. Feb. 24, 2021)(finding that the sum sought by plaintiffs' counsel was reasonable, even though the fees slightly exceed thirty percent of the total recovery because "it is less than the 'lodestar' amount for Plaintiff's counsel.").

      Accordingly, the Parties respectfully request judicial approval of the Parties' proposed settlement agreement and further request to be allowed to submit a stipulation of dismissal with prejudice as to Defendants, consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii).

Respectfully submitted,

| | |
|---|---|
| */s/ Eliseo Cabrera* | */s/ Randy Hernandez* |
| Eliseo Cabrera | Randy A. Hernandez |
| Katz Melinger PLLC | Kidonakis & Corona, PLLC |
| 370 Lexington Avenue, Suite 1512 | 1350 Avenue of the Americas, 2nd Fl. |
| New York, New York 10017 | New York, New York 10019 |
| (212) 460-0047 | (646) 389-3956 |
| edcabrera@katzmelinger.com | randy.hernandez@kandcpllc.com |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

```
The Court is in receipt of the above motion for settlement
approval and its accompanying papers.  The Court has reviewed the
settlement documents for fairness in accordance with the FLSA and
Second Circuit law, see, e.g., Cheeks v. Freeport Pancake House,
796 F. 3d 199 (2d Cir. 2015), and has concluded that the terms
are fair and reasonable.  It should be noted, however, that the
Court is not in this endorsement opining specifically on the
reasonableness of the rates charged by the attorneys and
paralegals representing Plaintiff.

Accordingly, the settlement is approved, and the Clerk of Court
is directed to terminate all pending motions, adjourn all
remaining dates, and close this case.

Dated:    April 10, 2023          SO ORDERED.
          New York, New York
```

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE